ABRAHAM H. CLARKE *et al.*, Appellants, *against* JOHN R. ANDERSON *et al.*, Respondents.

(Decided April 2d, 1888.)

In an action for damages caused by an overflow of water from a tank on premises of defendants, occupants of a floor above plaintiff in the same building, it appeared that the overflow was caused by the failure of defendants to turn off at night the stop-cock in the pipe leading from the main, and by allowing the overflow-pipe and drip-basin to become so filled up that the overflow did not run off. It did not appear that defendants knew of the use of such stop-cock, or that the pressure on the pipes was sufficient to fill the tanks, they having always used a force-pump for that purpose. *Held*, that there was not sufficient evidence of negligence to warrant submission of the case to the jury.

Admissions as to past transactions, made by an employe at the time not engaged in any business of his employer with which such admissions are connected, are inadmissible against the employer.

APPEAL from a judgment and order of the General Term of the City Court of New York affirming a judgment of that court entered upon the dismissal of a complaint and an order denying a motion for a new trial.

The action was brought to recover damages to goods caused by an overflow of Croton water from the premises occupied by defendants into the premises below them occupied by plaintiff in the building No. 68 Reade Street, in this city, of which premises respectively the parties were tenants. The damage occurred between Saturday night, May 19th, and Monday morning, May 21st, 1883.

*William J. Mann*, for appellants.

*John H. Parsons*, for respondent.

J. F. DALY, J. — It is claimed by the plaintiffs that the evidence shows that the overflow of water, and damage, was caused by the failure of defendants to turn the water off

Clarke *v.* Anderson.

from their tank by using the stop-cock on their premises, and also by negligently suffering the drip-basin beneath the tell-tale pipe that led from the tank to become clogged up so that the overflow from the tank could not be carried off. There was no evidence that the stop-cock had ever been used to cut off the water from the tank, or that defendants knew that it was to be used to cut off the water at night, and prevent its rising and overflowing, or that they knew that the water would by its own pressure rise, fill the tank, and overflow. The plaintiffs' experts, plumbers, say that the pressure of the water was greater on Sundays than on week days, and greater at night than in the daytime; but there was no evidence that the defendants knew this fact, or that the water had ever risen so high as to fill the tank, or overflow, before this particular damage occurred; nor is there anything in the case to prove that defendants had reason to know or to apprehend any such rising of the water. If they did not know it, and had no reason to expect it, where was the negligence in failing to turn the water off, or to keep the drip-basin open? They knew that the drip-basin was used to carry off the water that overflowed through the tell-tale pipe from the tank; but the object of the tell-tale was to notify the person pumping water into the tank that it was full, and the basin, even if somewhat clogged, would suffice to carry off the overflow from pumping. There was nothing to warn them that there would be an overflow from the tank except by pumping water into it. They filled the tank by a hand-pump on their premises; and the fact that the pump had to be used to fill it was some notice that the tank could not be filled in any other way. There was no evidence of negligence to go to a jury.

The plaintiffs attempted to introduce evidence of declarations made by a clerk of defendants, one Hines, that he usually turned off the water, but must have forgotten it on that Saturday night. These admissions, it is alleged, were made the morning after the damage, to an employe of plaintiffs, and in reply to a question by the latter. It needs

no argument to show that they were inadmissible, being mere hearsay. It is suggested that they were "part of the *res gestæ;*" but Hines was not, at the time of making the admissions, engaged in any business of his employers with which such admissions were connected, and the declarations related wholly to past events.

The judgment and order should be affirmed, with costs.

VAN HOESEN, J., concurred.

Judgment and order affirmed, with costs.